Le Baron agt. Long Island Bank.

## SUPREME COURT.

CALEB B. LE BARON agt. THE LONG ISLAND BANK and GEORGE G. SAMPSON.

*An executor cannot pledge property of the estate as security for loans to himself individually.*

Where a person advances money to one of two executors and receives as security therefor scrip of bank stock belonging to the estate, he having at the time reason to know and believe that the money was not borrowed for the benefit of the estate but for the private use of such executor,

*Held*, that the lender of the money cannot hold the stock as security for the advances, nor compel a transfer to him of the stock on the books of the bank.

*Special Term, April,* 1876.

*Lucien Birdseye,* for plaintiff.

*S. P. Nash,* for defendants.

VAN VORST, *J.* — The executor is the owner of the personal property of the testator. The absolute title rests in him and he possesses the "*jus disponendi*" in its full force. The honest purchaser is under no duty to see that the moneys are faithfully applied by the executor. This was decided in *Leitch et al.* agt. *Wells et al.* (48 *N. Y.*, 586, HUNT, *J.*). A person dealing in good faith with an executor would have a right to presume that in selling the personal property of the estate he was doing so for the purposes to which he was

authorized. And acting in good faith, without notice to the contrary and for a good and sufficient consideration, would, without doubt, be protected in his action.

But if he knew, or had sufficient reason to believe, that the property was not disposed of for the purposes of the estate, to raise money for the payment of debts of the testator, or for the discharge of legacies or other legal ends, but, on the contrary, that the executor was selling or pledging the property to raise funds to pay his own individual debts, or to raise moneys for his own use, he cannot be said to be a *bona fide* purchaser, and could not, as against the parties in interest, hold on to the property.

He would, in such case, be a participator in the wrong done to the estate and those interested therein.

Before the plaintiff advanced the moneys on the faith of the Long Island Bank stock he had examined the will of the testator, by the terms of which he was advised that the two executors held the stock in trust for the widow of the testator. The stock stood in the name of the testator at the time it was transferred to the plaintiff. There is sufficient in the evidence to show satisfactorily that plaintiff was advised by Norman D. Sampson, the executor to whom he paid the money, and who alone signed the transfer of the stock, that he was in want of money, not for the affairs of the estate, but to meet his own private engagements.

The plaintiff claims to have purchased the stock, but there is something in the transaction itself which should have satisfied him that the executor was not acting honestly and for the estate he represented.

The stock was a valuable dividend-paying security. It was worth a premium of about twenty per cent. It was turned over to the plaintiff at par. He paid and advanced $4,900 and received stock worth, and which could have been sold in the market for, a sum exceeding $6,000.

The plaintiff, a dealer in stocks and securities, well knew how readily this stock could have been openly sold in the

market for a sum largely in advance of what he paid and advanced.

The offer of the executor to sell the stock, and plaintiff claims it was a sale, for the sum in question was, in itself, under the circumstances, sufficient to put the plaintiff upon inquiry, and was a notice to him that the transaction was not a legitimate exercise of the power of one out of two executors.

The co-executor, who was within a few minutes' walk of the plaintiff's office, did not join in the application for the money, nor did he sign the transfer, yet no inquiry was made of him. He was kept in ignorance of the whole matter until after his associate executor, who had conducted the negotiation individually, and who received the money to his own use, had secretly absconded. The evidence shows that the transaction was not a sale of the stock, as is claimed by the plaintiff in his complaint, but was a pledge thereof to secure the sum advanced.

The non-production of the memorandum in writing, signed by the executor at the time the money was paid and the transfer signed, is not satisfactorily accounted for, and the plaintiff's evidence in respect thereto is inconsistent and contradictory.

Under the evidence I cannot think that the plaintiff was acting innocently and in good faith in dealing with and in receiving the stock in question from Norman D. Sampson, one of the executors, to the injury of the estate, and must conclude that he cannot hold the same, as security for the moneys advanced by him, not for the benefit of the estate, but for the private use of such executor.

I think it would be unjust to adjudge that the same should be transferred to plaintiff on the books of the bank.

The plaintiff knew when he made the loan that the stock was trust property, and had good reason to believe that Norman D. Sampson was misappropriating it.

The plaintiff's complaint should be dismissed, with costs.